Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | John W. Darrah | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 6098 | **DATE** | 10/23/2001 |
| **CASE TITLE** | DESMOND & AHERN vs. MICHELLE SCHEFFKI, et al | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
     ☐ FRCP4(m)   ☐ General Rule 21   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Status hearing held and continued to 12/19/01 at 9:30 a.m. Enter Memorandum Opinion And Order. Defendant MIP's motion to dismiss counts VIII through XI is denied. Parties to file responses to remaining counts to dismiss on or before 11/19/01.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | **Document Number** |
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | | |
| | Notified counsel by telephone. | | OCT 29 2001 date docketed | |
| ✓ | Docketing to mail notices. | | | 36 |
| | Mail AO 450 form. | | CM docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| LG courtroom deputy's initials | | 01 OCT 25 AM 11:37 | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

DESMOND & AHERN, LTD.,  )
a Delaware Corporation,  )
                         )
         Plaintiff,      )
                         )    No. 01 C 6098
     v.                  )
                         )    Judge John W. Darrah
MICHELLE SCHEFFKI; CLIFTON )
GUNDERSON, LLP; MICRO INFORMATION )
PRODUCTS, INC., a Texas Corporation; and )
STEVEN DEPEDER,          )
                         )
         Defendants.     )

## MEMORANDUM OPINION AND ORDER

Plaintiff, Desmond & Ahern, Ltd., brought a multi-count complaint against defendants, Michelle Scheffki (Scheffki), Clifton Gunderson, Micro Information Products, Inc. (MIP), and Steven Depeder (Depeder), seeking damages for alleged misconduct by the defendants. MIP now moves to dismiss the claims asserted against it for failure to state a claim. These claims include breach of contract (Count VIII), intentional interference with contractual relationships (Count IX), intentional interference with prospective economic advantage (Count X) and conspiracy (Count XI).

In reviewing a motion to dismiss, the court reviews all facts alleged in the complaint and any inferences reasonably drawn therefrom in the light most favorable to the plaintiff. *See Marshall-Mosby v. Corporate Receivables, Inc.*, 205 F.3d 323, 326 (7th Cir.2000). Dismissal is warranted only if the plaintiff can prove no set of facts in support of its claims that would entitle it to relief. *See Conley v. Gibson*, 355 U.S. 41, 45-46 (1957).

A reading of the complaint supports the following summary of the alleged conduct of the parties. Plaintiff is a full-service certified public accounting firm with a particular emphasis on the non-profit sector. In January 1993, plaintiff hired Scheffki as a certified public accountant. Subsequently, Scheffki became the department head of plaintiff's consulting division of the business.

In November 1997, plaintiff entered into a contract with MIP, pursuant to which plaintiff became an authorized reseller of the MIP Non-Profit Accounting Systems software. As head of plaintiff's consulting department, Scheffki acted as the main contact with MIP. Plaintiff's potential MIP software client list was registered with MIP and maintained on MIP's "MIP On-Line" internet site.

Over the course of its relationship with MIP, plaintiff invested substantial amounts of money, time, and effort promoting and marketing MIP's programs and in developing an infrastructure to support its relationship with MIP. In September 1999, pursuant to MIP's urging, plaintiff terminated its contract for another non-profit accounting software product in order to focus more effort into its relationship with MIP. At that time, MIP and plaintiff renewed their contract. MIP recognized plaintiff as one of its top ten resellers in the country in 1999 and 2000.

In May 2000, Scheffki asked plaintiff, and plaintiff agreed, to hire her brother, Depeder. Unhappy with Depeder's work, plaintiff informed Scheffki that it wanted to terminate his employment in October 2000. Scheffki urged plaintiff to keep Depeder employed until at least December 2000.

At the end of December 2000, Scheffki informed plaintiff that she was terminating her employment with plaintiff and was going to work for one of plaintiff's direct competitors, Clifton

2

Gunderson. Depeder also ceased working for plaintiff and began working for Clifton Gunderson.

On January 16, 2001, MIP informed plaintiff that it was terminating its contract with plaintiff effective February 16, 2001. Subsequently, MIP and Clifton Gunderson entered into a reseller contract. Despite the thirty-day notice provision in the MIP's and plaintiff's contract, MIP "effectively cancelled" the contract prior to February 16, 2001, by (1) preventing access by plaintiff to MIP On-Line in addition to plaintiff's own client database and materials forwarded to MIP; (2) refusing to give plaintiff its own client database and materials; (3) removing plaintiff as an authorized reseller on MIP's website; (4) refusing to communicate with plaintiff; (5) changing mailings for marketing seminars to indicate Clifton Gunderson, and not plaintiff, as an authorized reseller; and (6) not acknowledging personnel who remained employed by plaintiff to be qualified to continue providing MIP services after Scheffki induced some of plaintiff's employees to leave plaintiff's employ and work for Clifton Gunderson.

MIP argues that plaintiff failed to sufficiently plead a breach of contract.

To state a claim for breach of contract, plaintiff must allege the existence of a contract, that the plaintiff performed its contractual obligations, that MIP breached the contract, and that the plaintiff suffered damages. *Petri v. Gatlin*, 997 F.Supp. 956, 963-64 (N.D.Ill. 1997) (*Petri*); *Barille v. Sears Roebuck & Co.*, 682 N.E.2d 118, 121 (Ill. 1997).

Count VIII of plaintiff's complaint alleges that MIP breached its contract with plaintiff because it "effectively" terminated its relationship with plaintiff before the thirty-day-notice time period had expired. Plaintiff's complaint identifies the six actions stated above in its complaint as evidencing the breach. Plaintiff also alleges that the breach of the contract caused damages to plaintiff in the form of loss of MIP actual and potential sales during that time period, loss of

ancillary service business, and damage to its business reputation.

The complaint sufficiently pleads a breach of contract claim and adequately puts MIP on fair notice of the basis of the claim against it. *See Scott*, 195 F.3d at 951. The complaint alleges the existence of a contract, the basis of the alleged breach, and damages. Furthermore, while the complaint may not specify that plaintiff fulfilled its contractual obligations, such can be inferred from the pleadings as demonstrated by plaintiff's allegations that it attempted to remain a reseller through the thirty-day--notice time period but that MIP's actions prevented such from occurring. *See Orix Credit Alliance, Inc. v. Taylor Machine Works, Inc.*, 844 F. Supp. 1271, 1273 (N.D. Ill. 1994) ("The complaint's allegations or inferences drawn from them also satisfy the requirement for pleading ... satisfaction of the conditions precedent."); *Scandinavian Airlines System Denmark-Norway-Sweden v. McDonald's Corp.*, 870) F. Supp. 213, 217 (N.D. Ill. 1994) (finding that plaintiff had sufficiently alleged that it performed all conditions precedent "[a]lthough the amended complaint does not contain the usual language that plaintiff has performed all obligations required of it"). Accordingly, the breach of contract claim against MIP is not dismissed.

MIP also argues that plaintiff fails to adequately plead its intentional interference with contractual relationships claim.

Under Illinois law, the elements of a tortious interference with contract claim include: (1) the existence of a valid and enforceable contractual relationship, (2) the defendant's knowledge of such contractual relationship, (3) the defendant's intentional and unjustified inducement of a breach of said contractual relationship, (4) breach by the other party caused by the defendant's conduct, and (5) damages. *Cook v. Winfrey*, 141 F.3d 322, 327 (7th Cir. 1998). A tortious

4

interference with contractual relationship claim includes "the situation in which the defendant prevents the plaintiff from performing the contract." *Havoco of America v. Sumitomo Corp.*, 971 F.2d 1332, 1344 (7th Cir. 1992) quoting *Scholwin v. Johns*, 147 Ill. App. 3d 598 (1986).

MIP argues that plaintiff failed to plead its conduct was directed at a third party. However, plaintiff does plead that MIP intentionally interfered with the contractual relationships that plaintiff had with its clients, that MIP changed mailings for marketing seminars indicating that Clifton Gunderson, and not plaintiff, was an authorized reseller, and that MIP removed plaintiff as an authorized reseller from its website prior to the end of its contract with MIP. These allegations sufficiently plead conduct on the part of MIP that was directed at a third party. Furthermore, the allegations and attached contract between MIP and plaintiff sufficiently set out that MIP had knowledge of plaintiff's contractual relationships with clients and had all information necessary to directly contact such clients, as the database of clients was maintained on MIP's website. Accordingly, plaintiff has sufficiently pled this claim.

MIP next argues that plaintiff failed to sufficiently plead a claim for tortious interference with prospective economic advantage.

In order to state a cause of action for interference with prospective economic advantage, a party must allege that: (1) plaintiff had a valid business relationship or expectation of entering into a valid business relationship; (2) defendant knew of that relationship or expectancy; (3) defendant intentionally interfered, inducing or causing a breach or termination of relationship or expectancy; and (4) damages. *Labor Ready, Inc. v. Williams Staffing*, 149 F.Supp.2d 398, 410 (N.D.Ill. 2001).

MIP argues that plaintiff failed to plead that MIP knew of plaintiff's business expectancy

5

with potential clients, including plaintiff's potential consulting and audit clients. However, based on the complaint, MIP knew that plaintiff was an authorized reseller of MIP's software through the end of its contract, including the thirty-day-notice time period; therefore, MIP knew, at the minimum, of the business expectancy for this thirty-day period.

MIP also argues that plaintiff failed to plead that MIP took any action directed at plaintiff's customers. As stated above, plaintiff has sufficiently pled that MIP undertook conduct that was directed at plaintiff's potential clients, including removing plaintiff from its list of authorized resellers on its website and removing plaintiff from its mailings.

MIP contends that plaintiff failed to sufficiently plead a valid expectation of future business. Contrary to MIP's argument, plaintiff did sufficiently plead a valid expectation of future business. Paragraph 68 of plaintiff's complaint alleges, in pertinent part, that "MIP prevented [plaintiff] from obtaining [a list of clients], including existing and potential clients to whom [plaintiff] had a reasonable expectation of providing business." Accordingly, plaintiff's intentional interference with prospective economic advantage claim is not dismissed.

Last, MIP argues that plaintiff failed to sufficiently plead a claim for conspiracy.

Civil conspiracy is defined as "a combination of two or more persons for the purpose of accomplishing by concerted action either an unlawful purpose or a lawful purpose by unlawful means." *Buckner v. Atlantic Plant Maint., Inc.*, 182 Ill.2d 12, 23 (1998). To state a claim for civil conspiracy, a plaintiff must allege an agreement and a tortious act committed in furtherance of that agreement. *McLure v. Owens Corning Fiberglass Corp.*, 188 Ill.2d 102, 133 (1999).

Specifically, MIP challenges plaintiff's conspiracy claim as failing to allege an agreement or understanding between the defendants and that the alleged acts are insufficient to raise an

inference of such an agreement or understanding.

At this stage of litigation, plaintiff adequately pled its conspiracy count because plaintiff has pled facts that support an inference of an agreement or an understanding by the defendants toward the goal of severing plaintiff's client base and diverting such clients to Clifton Gunderson. These allegations include the relationships between the defendants; the fact that all of the defendants had contact with each other both before, during, and after the alleged wrongful conduct; and the timing of the events by all of the defendants. Accordingly, the conspiracy claim is not dismissed.

For the foregoing reasons, defendant MIP's Motion to Dismiss Counts VIII through XI is denied.

Dated: October 23, 01

JOHN W. DARRAH
United States District Judge