# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | John W. Darrah | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 6098 | **DATE** | 12/19/2001 |
| **CASE TITLE** | DESMOND & AHERN, LTD. vs. MICHELLE SCHEFFKI, et al | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Enter Memorandum Opinion And Order. Defendant Scheffki's motion to dismiss counts III, VII, IX, X and XI pursuant to Rule 12(b)(6) and Count I as duplicative [18-1] is denied; Plaintiff's motion to dismiss counts I-VI of Scheffki's counterclaim pursuant to Rule 12(b)(6) [30-1] is granted with respect to paragraphs 57, 58, and 59 and denied in all other respects; and AR&S Partnership, Hugh J. Ahern and George B. Reynolds' motion to dismiss defendant Scheffki's counterclaim and third-party complaint [32-1] is denied with respect to the counterclaims except as to paragraphs 57, 58 and 59, and granted with respect to the third-party complaint.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | |
|---|---|---|---|
| | No notices required, advised in open court. | | |
| | No notices required. | number of notices | Document Number |
| | Notices mailed by judge's staff. | | |
| | Notified counsel by telephone. | DEC 21 2001 | |
| ✓ | Docketing to mail notices. | date docketed | 41 |
| | Mail AO 450 form. | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | |
| LG | courtroom deputy's initials | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials |

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| DESMOND & AHERN, LTD.,<br>a Delaware Corporation,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>MICHELLE SCHEFFKI; CLIFTON<br>GUNDERSON, LLP; MICRO INFORMATION<br>PRODUCTS, INC., a Texas Corporation; and<br>STEVEN DEPEDER,<br><br>　　　　Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | No. 01 C 6098<br><br>Judge John W. Darrah |

## MEMORANDUM OPINION AND ORDER

Before the Court are three motions to dismiss. Defendant Michelle Scheffki ("Scheffki")

moves, pursuant to Federal Rule of Civil Procedure 12(b)(6), to dismiss Counts III, VII, IX, X

and XI and, as duplicative of the other counts, Count I of Plaintiff Desmond & Ahern, Limited's

("D&A") Complaint. Scheffki filed a counterclaim against D&A and a third-party complaint

against Hugh J. Ahern ("Ahern") and George B. Reynolds ("Reynolds"), individually and as

partners in AR&S Partnership ("AR&S") and shareholders in D&A. D&A moves to dismiss

Scheffki's counterclaim. Ahern, Reynolds, and AR&S move to dismiss the third-party

complaint.

For the reasons set forth below, Defendant Michelle Scheffki's Motion to Dismiss Counts

III, VII, IX, X and XI Pursuant to Rule 12(b)(6) and Count I as Duplicative [18-1] is denied;

Desmond & Ahern's Motion to Dismiss Counts I-VI of Scheffki's Counterclaim Pursuant to

Rule 12(b)(6) [30-1] is granted in part and denied in part; and AR&S Partnership, Hugh J. Ahern and George B. Reynolds' Motion to Dismiss Defendant Michelle Scheffki's Counterclaim and Third-Party Complaint [32-1] is denied in part and granted in part.

## LEGAL STANDARD

When considering a motion to dismiss, well-pleaded allegations in the complaint are accepted as true. *Turner/Ozanne v. Hyman/Power*, 111 F.3d 1312, 1319 (7th Cir. 1997). Any ambiguities in the complaint are construed in favor of the plaintiff. *Kelly v. Crosfield Catalysts*, 135 F.3d 1202, 1205 (7th Cir. 1998). Dismissal is proper only when it appears beyond doubt that Plaintiff can prove no set of facts to support the allegations in his or her claim. *Strasburger v. Board of Education*, 143 F.3d 351, 359 (7th Cir. 1998).

"Although the Federal Rules of Civil Procedure do not require a plaintiff 'to set out in detail the facts upon which he bases his claim'" [citation omitted], he must "set out sufficient factual matter to outline the elements of his cause of action or claim, proof of which is essential to his recovery.'" *Benson v. Cady*, 761 F.2d 335, 338 (7th Cir. 1985). A complaint will not avoid dismissal if it contains "bare legal conclusions" absent facts outlining the basis of the claims. *Perkins v. Silverstein*, 939 F.2d 463, 467 (7th Cir. 1991).

## BACKGROUND

A reading of D&A's complaint supports the following summary of the alleged conduct of the parties. D&A is a full-service certified public accounting firm with a particular emphasis on the non-profit sector. In January 1993, D&A hired Scheffki as a certified public accountant. Subsequently, Scheffki became the department head of D&A's consulting division of the business.

In November 1997, D&A entered into a contract with Micro Information Products, Inc.

("MIP"); pursuant to which D&A became an authorized reseller of the MIP Non-Profit Accounting Systems software. As head of D&A's consulting department, Scheffki acted as the main contact with MIP. D&A's potential MIP software client list was registered with MIP and maintained on MIP's "MIP On-Line" internet site.

Over the course of its relationship with MIP, D&A invested substantial amounts of money, time, and effort promoting and marketing MIP's programs and in developing an infrastructure to support its relationship with MIP. In September 1999, pursuant to MIP's urging, D&A terminated its contract for another non-profit accounting software product in order to focus more effort into its relationship with MIP. At that time, MIP and D&A renewed their contract. MIP recognized D&A as one of its top ten resellers in the country in 1999 and 2000.

In May 2000, Scheffki asked D&A, and D&A agreed, to hire her brother, Steven Depeder ("Depeder"). Unhappy with Depeder's work, D&A informed Scheffki that it wanted to terminate Depeder's employment in October 2000. Scheffki urged D&A to keep Depeder employed until at least December 2000.

At the end of December 2000, Scheffki informed D&A that she was terminating her employment with D&A and was going to work for one of D&A's direct competitors, Clifton Gunderson ("CG"). Depeder also ceased working for D&A and began working for CG.

On January 16, 2001, MIP informed D&A that it was terminating its contract with D&A effective February 16, 2001. Subsequently, MIP and CG entered into a reseller contract. Despite the thirty-day notice provision in the MIP's and D&A's contract, MIP "effectively cancelled" the contract prior to February 16, 2001, by (1) preventing access by D&A to MIP On-Line in addition to D&A's own client database and materials forwarded to MIP; (2) refusing to give D&A its own

client database and materials; (3) removing D&A as an authorized reseller on MIP's website; (4) refusing to communicate with D&A; (5) changing mailings for marketing seminars to indicate Clifton Gunderson, and not D&A, as an authorized reseller; and (6) not acknowledging personnel who remained employed by D&A to be qualified to continue providing MIP services after Scheffki induced some of D&A's employees to leave D&A's employ and work for CG.

Scheffki's counterclaim and third-party complaint paint a very different picture. D&A hired Scheffki in January 1992. At that time, Ahern and Reynolds were the only D&A shareholders. In May 1994, D&A announced Scheffki's promotion to equal partner and shareholder with Ahern and Reynolds to its bankers. In June 1994, Scheffki's new position was announced to D&A's clients at a party given by D&A. From that time until November 2000, Scheffki, Ahern and Reynolds were paid equally. Around the same time, Scheffki was appointed D&A's corporate secretary, and her status as such was listed on D&A's annual reports until 2000. During this period, Ahern served as the president and managing partner of D&A.

In June 1994, Scheffki, Ahern and Reynolds formed AR&S. The general purpose of AR&S is to hold the ownership interest in real and personal property used by D&A, particularly the beneficial interest in a trust holding the title to the building in which D&A operates. Thus, AR&S held title to all of the office equipment used by D&A and three vehicles used by Ahern, Reynolds and Scheffki.

Neither Scheffki, Ahern, nor Reynolds signed any written agreements regarding their working relationships in or the inter-relationship of D&A or AR&S. Scheffki, Ahern and Reynolds were never asked to sign non-compete agreements.

During Scheffki's tenure with D&A, there was a 50% increase in annual revenue due to the

-4-

business brought in and managed by Scheffki. Despite the increased revenue, around December 3, 2000, Ahern told Scheffki that he was unhappy with the current working relationship and suggested that it might be time to negotiate Ahernn's leaving D&A.

On December 22, 2000, Scheffki told Reynolds that she had spoken with CG about a position but had not yet accepted one and would not until after the tax season. She also told Reynolds that CG was interested in discussing a merger of CG and D&A. Later that day, Reynolds and Ahern told her to set up a meeting between the two firms, which she scheduled for December 28, 2000.

The scheduled meeting did not take place because, on December 26, 2000, Ahern and Reynolds fired her and other consultants. On December 28, 2000, Reynolds proposed a settlement and transition plan between D&A, AR&S and Scheffki. Scheffki did not sign the letter that commemorated this proposal.

Scheffki was allowed to serve D&A's clients until January 6, 2001, when her access to its computer network and printers was blocked, and her e-mail and voicemail were cancelled. On January 12, 2001, Scheffki, Ahern and Reynolds discussed the wind-up of the corporation and the partnership and reached an agreement on the possession and ownership of a certain vehicle and computers. But the parties could not come to a final agreement. Ahern and Reynolds have refused to wind-up AR&S business and distribute the assets equitably. Specifically, Ahern and Reynolds refuse to acknowledge her equal ownership interest in D&A and to equitably buy out her interest.

Scheffki began working at CG on January 15, 2001.

## DISCUSSION

*Scheffki's Motion to Dismiss*

D&A has filed an eleven-count Complaint against the Defendants Scheffki, CG, MIP, and

Depeder. Count III alleges that Scheffki and Depeder misappropriated trade secrets. Count VII alleges that Scheffki, Depeder and CG intentionally interfered with D&A's contract with MIP. Count IX alleges that all defendants intentionally interfered with D&A's contractual relationships with its clients. Count X alleges a claim for intentional interference with prospective economic advantage against all defendants. Count XI alleges that all defendants conspired to sever D& A's client base and divert it to CG.

In order to plead a claim for misappropriation of a trade secret, D&A must plead that: (1) information that was secret, i.e. "not generally known in the industry"; (2) was misappropriated, i.e "stolen from it rather than developed independently or obtained from a third source"; and (3) used in Scheffki's business. *Composite Marine Propellers, Inc. v. Van Der Woude*, 962 F.2d 1263, 1265-66 (7th Cir. 1992).

Scheffki argues that Count III fails to state a claim for misappropriation of a trade secret because it does not allege actual use of the trade secret in any of defendants' businesses. Count III does adequately plead a claim for misappropriation of a trade secret. D&A alleges that "it created and compiled data, pricing structures and lists of actual and potential clients as well as market analysis information ("Proprietary Information")" that it kept secret. (Compl. ¶¶ 43, 44.) D&A further alleges that such information was not generally known. D&A alleges that Scheffki took that secret information and gave it to CG, D&A's direct competitor. It can be reasonably inferred from the allegation that because Scheffki gave the proprietary information to her new employer CG that she and CG used the information. Therefore, dismissal of Count III is inappropriate.

Scheffki argues that dismissal of Count VII is appropriate because D&A fails to allege an inducement to breach or an actual breach of the contract between D&A and MIP.

-6-

In order to plead a claim of intentional interference with an existing contract, D&A must plead "(1) the existence of a valid and enforceable contract between . . . [P]laintiff and another, (2) [Scheffki's] awareness of this contractual relation, (3) [Scheffki's] intentional and unjustified inducement of a breach of the contract which causes a subsequent breach by the other, and (4) damages." *A-Abart Elect. Supply, Inc. v. Emerson Elect. Co.*, 956 F.2d 1399, 1404 (7th Cir. 1992) (quoting *Mannion v. Stallings & Co.*, 561 N.E.2d 1134, 1139 (Ill. App. Ct. 1990)).

Count VII adequately states a claim for intentional interference with an existing contract. D&A alleges a valid and enforceable contract between itself and MIP in 1999 and 2000. The fact that Scheffki was employed by D&A at that time supports the inference that she knew of the contract between D&A and MIP. D&A alleges that "but for the actions of Scheffki . . . MIP would not have terminated its contract with" D&A. (Compl. ¶ 58.) This language is sufficient to plead that Scheffki intentionally induced MIP to breach the contract. "[D&A] is under no obligation to plead further facts that [it] believes supports [its] claims." *Cook*, 141 F.3d at 328. Therefore, dismissal of Count VII is inappropriate.

Scheffki also argues that D&A fails to adequately plead its intentional interference with contractual relationships claim in Count IX. Scheffki argues that Count IX should be dismissed because it fails to identify a valid enforceable contract between D&A and any third party or that there was a breach of any contract.

Under Illinois law, the elements of a tortious interference with contract claim include: (1) the existence of a valid and enforceable contractual relationship, (2) the defendant's knowledge of such contractual relationship, (3) the defendant's intentional and unjustified inducement of a breach of said contractual relationship, (4) breach by the other party caused by the defendant's conduct, and

(5) damages. *Cook v. Winfrey*, 141 F.3d 322, 327 (7th Cir. 1998). A tortious interference with contractual relationship claim includes "the situation in which the defendant prevents the plaintiff from performing the contract." *Havoco of America v. Sumitomo Corp.*, 971 F.2d 1332, 1344 (7th Cir. 1992) (quoting *Scholwin v. Johns*, 147 Ill. App. 3d 598 (1986)).

D&A has adequately pled a claim for intentional interference with contract. D&A alleges that, before Scheffki left D&A, it had multiple contracts with clients. D&A alleges that Scheffki made representations to those clients that D&A and CG had merged or that Scheffki had never left D&A. D&A alleges that based on Scheffki's actions, its clients terminated their contractual relationships with D&A. D&A has alleged contracts, that Scheffki knew of those contracts and induced its clients to breach those contracts, and that those clients terminated their contracts with D&A, causing D&A damage.

The fact that Count IX couches the breach in terms of termination of contracts does not matter. Any ambiguities in the complaint are construed in favor of the plaintiff. *Kelly,* 135 F.3d at 1205. Furthermore, complaints "serve[] to put . . . defendant[s] on notice." *Toth v. USX Corp.*, 883 F.2d 1297, 1298 (7th Cir. 1989). The allegations in Count IX are sufficient to place Scheffki on notice of the claim being asserted against her. Thus, D&A has stated a claim for intentional interference with contractual relationships. Therefore, dismissal of Count IX is inappropriate.

Scheffki argues that D&A has not adequately stated a claim for interference with prospective economic advantage in Count X because D&A failed to identify any breach or termination by a third party that was induced by Scheffki.

In order to state a cause of action for interference with prospective economic advantage, a party must allege that: (1) plaintiff had a valid business relationship or expectation of entering into

a valid business relationship; (2) defendant knew of that relationship or expectancy; (3) defendant intentionally interfered, inducing or causing a breach or termination of relationship or expectancy; and (4) damages. *Labor Ready, Inc. v. Williams Staffing*, 149 F.Supp.2d 398, 410 (N.D.Ill. 2001).

D&A has adequately pled a claim for intentional interference with prospective economic advantage. In Count X, D&A alleges that it had a list of existing and potential clients to whom it had a reasonable expectation of providing business, that Scheffki took that list to CG, that she intentionally interfered with D&A's reasonable commercial expectations and that it was damaged. D&A has pled all the elements of intentional interference with prospective economic advantage. "The Federal Rules do not require that [D&A's] complaint allege the specific third party or class of third parties with whom [it] claims to have had a valid business expectancy." *Cook*, 141 F.3d at 328. The fact that D&A has alleged that a valid business expectancy existed and Scheffki intentionally interfered with it is sufficient under the Federal Rules. *See Cook*, 141 F.3d at 328. Therefore, dismissal of Count X is inappropriate.

Scheffki argues that Count XI fails to state a claim for conspiracy because it does not identify a specific agreement between the defendants and is vague in its reference to the unlawful means used in furtherance of the conspiracy.

Civil conspiracy is defined as "a combination of two or more persons for the purpose of accomplishing by concerted action either an unlawful purpose or a lawful purpose by unlawful means." *Buckner v. Atlantic Plant Maint., Inc.*, 182 Ill. 2d 12, 23 (1998). To state a claim for civil conspiracy, a plaintiff must allege an agreement and a tortious act committed in furtherance of that agreement. *McClure v. Owens Corning Fiberglass Corp.*, 188 Ill. 2d 102, 133 (1999).

At this stage of litigation, D&A has adequately pled its conspiracy count because plaintiff

has pled facts that support an inference of an agreement or an understanding by the defendants toward the goal of severing D&A's client base and diverting such clients to CG. These allegations include the relationships between the defendants; the fact that all of the defendants had contact with each other both before, during, and after the alleged wrongful conduct; and the timing of the events by all of the defendants.

Furthermore, D&A realleges, in Count XI, the allegations contained in the rest of the complaint. Paragraph 72 states that "Such a conspiracy was accomplished through unlawful means as set forth more fully above." This supports an inference that the unlawful means used in furtherance of conspiracy are the intentional interference with contractual relationships and prospective economic advantage, etc., alleged previously in the complaint. Accordingly, the conspiracy claim, Count XI, is not dismissed.

Finally, Scheffki argues that Count I (breach of fiduciary duty) should be dismissed because Count I is duplicative of all the other counts in the complaint. Dismissal of Count I as duplicative is inappropriate. The elements of a claim for breach of fiduciary duty are (1) existence of a fiduciary duty, (2) breach of that duty, and (3) resulting damages to the plaintiff. *LaSalle Bank Lake View v. Seguban*, 937 F. Supp. 1309, 1324 (N.D. Ill. 1996) (citation omitted). It is mere happenstance that the alleged conduct that is a breach of fiduciary duty is the same as the alleged conduct in the other torts alleged in the complaint.

However, Count I is not duplicative of the other counts in the complaint because the cause of action in Count I is completely different from the causes of action in the other counts. Scheffki's citation of *Automed Technologies, Inc. v. Eller*, 160 F. Supp. 2d 915 (N.D. Ill. 2001), is inapposite. In *Eller*, the count dismissed as duplicative pled the same cause of action against the same

defendants. 160 F. Supp. 2d at 919 n.1, 920. Therefore, dismissal of Count I as duplicative is inappropriate.

*D&A, AR&S, Ahern and Reynolds' Motions to Dismiss*

Scheffki filed a six-count counterclaim and third-party complaint against Ahern and Reynolds, individually and as shareholders in D&A and partners in AR&S. Count I requests an order dissolving AR&S. Count II asks the Court to order an equitable wind-up of AR&S's affairs. Count III alleges a breach of fiduciary duty by Ahern and Reynolds. Count IV alleges a claim of fraud and misrepresentation to gain an economic advantage against D&A, Ahern and Reynolds. Count V alleges a claim of unjust enrichment and/or conversion against D&A, AR&S, Ahern and Reynolds. Count VI alleges that Ahern has defamed Scheffki.

D&A moves to dismiss Count IV, arguing that Count IV should be dismissed for failure to plead fraud with particularity and to state a cause of action.

In order "[t]o state a claim for fraudulent misrepresentation under Illinois law, [Scheffki] must assert 1) that defendants made a statement; 2) of a material nature; 3) which was untrue; 4) known by the person making it to be untrue, or made in culpable ignorance of its truth or falsity; 5) relied upon by [Scheffki] to her detriment; 6) made for the purpose of inducing reliance; and 7) [Scheffki's] reliance led to [her] injury." *Bensdorf & Johnson, Inc. v. Northern Telecom Ltd.*, 58 F. Supp. 2d 874, 881 (N.D. Ill. 1999) (citing *Doherty v. Kahn*, 682 N.E.2d 163, 167 (Ill. App. Ct. 1997)). "[T]he alleged misrepresentation must . . . relate to a past or present fact, not a future or contingent event," except where the misrepresentations are part of a "scheme to defraud". *Bensdorf & Johnson*, 58 F. Supp. 2d at 881 (citing *Razdan v. General Motors Corp.*, 979 F. Supp. 755, 759 (N.D. Ill. 1997)). To take refuge in the "scheme to defraud" exception, a plaintiff must allege, in

addition to the intentional misrepresentation, "that defendant intended to induce plaintiff to act for defendant's benefit in reliance on the misrepresentation." *Bensdorf & Johnson*, 58 F. Supp. 2d at 881 (citations omitted).

Because this case is in federal court, Count IV must meet the pleading requirements of Rule 9(b). Rule 9(b) provides that "[i]n all averments of fraud . . . the circumstances constituting fraud . . . shall be stated with particularity. Fed.R.Civ.P. 9(b). This means that persons alleging fraud must state "'the who, what, when, where, and how.'" *Boyd Mach. & Repair Co. v. American Int'l Homes, Ltd.*, 100 F. Supp. 2d 898, 900 (N.D. Ill. 2000) (quoting *DiLeo v. Ernst & Young*, 901 F.2d 624, 628 (7th Cir. 1990)). "The allegations must be specific enough to provide the defendants with a general outline of how the alleged fraud scheme operated and of their purported role in the scheme." *Rohlfing v. Manor Care, Inc.*, 172 F.R.D. 330, 347 (N.D. Ill. 1997) (citations omitted).

To determine whether Count IV is sufficient, a court will bear in mind the purposes of Rule 9(b): "(1) protecting the defendants' reputations; (2) preventing fishing expeditions; and (3) providing adequate notice to the defendants." *Rohlfing*, 172 F.R.D. at 347 (citing *Vicom, Inc. v. Harbridge Merchant Servs., Inc.*, 20 F.3d 771, 777 (7th Cir. 1994)).

Scheffki alleges that in May 1994, Ahern and Reynolds told her that she was an equal partner and shareholder in D&A. Scheffki further alleges that D&A announced her new status to its bankers in May 1994, and to its clients and friends at a D&A party in June 1994. Scheffki also alleges that from 1994 until 2000, Ahern and Reynolds represented to the public and D&A employees that she was a partner. She further alleges that articles about the firm in professional journals indentified her as a partner of D&A and that D&A's own website identified her as a partner.

These allegations are sufficient to satisfy the requirements of who, what, where, when and

how. Scheffki has alleged specifically when and where and to whom Ahern, Reynolds and D&A made misrepresentations about her status as a partner. Furthermore, she has alleged what the substance of the misrepresentation was, that she was a partner. This is sufficient to state a general outline of the alleged fraud.

The statement was material and, according to D&A, untrue. The allegation that D&A, Ahern and Reynolds are trying to defraud her by saying now that she never was a partner supports the inference that the statement was known to be untrue by D&A, Ahern and Reynolds.

D&A argues that Scheffki alleges a future promise, not a misrepresentation of present fact, and that, therefore, Count IV should be dismissed. D&A argues that Scheffki's allegation that she was "being made" a partner is a future promise and cannot form the basis of a claim for fraudulent misrepresentation.

As was noted earlier, the counterclaim and third-party complaint support the reading that there was no future promise to make Scheffki a partner and that, in fact, Scheffki had been a partner since 1994.

Even if there was only a future promise to make her a partner, as was discussed earlier, misrepresentations can relate to a future promise if they are part of a "scheme to defraud". *Bensdorf & Johnson*, 58 F. Supp. 2d at 881. Misrepresentations relating to future promises are part of a "scheme to defraud" if "the defendant intended to induce plaintiff to act for defendant's benefit in reliance on the misrepresentation." *Bensdorf & Johnson*, 58 F. Supp. 2d at 881 (citations omitted).

Here, Scheffki alleges that "when Ahern, Reynolds and Scheffki discussed the amount of rental payments to be made by D&A to AR&S, Ahern and Reynolds told Scheffki that the amount of the rental payment . . . did not matter because the three of them were also equal owners in D&A,

and therefore each of them would receive the same benefit no matter how the funds were divided between the two related business entities." (Countercl. & Third-Party Compl. ¶ 51.) This allegation supports the inference that D&A, Ahern and Reynolds intended to induce Scheffki to act for their benefit in reliance on the misrepresentation. If Scheffki believed she was a partner in D&A and would recoup the rental payments as part of the profits of D&A, she would not, as a partner of AR&S and part owner of the beneficial interest in the real property in which D&A conducted its business, seek fair rental value for the space.

Moreover, as was discussed above, Scheffki has alleged detrimental reliance on the false statement and that she suffered an injury, loss of the fair market rental payments. Therefore, dismissal of Count IV is inappropriate.

D&A also moves to dismiss Count V, arguing that Count V should be dismissed for violating Rule 10(b) of the Federal Rules of Civil Procedure and for failing to state a cause of action for unjust enrichment or conversion.

Rule 10(b) provides that "[a]ll averments of claim or defense shall be made in numbered paragraphs, the contents of which shall be limited as far as practicable to a statement of a single set of circumstances . . . Each claim founded upon a separate transaction or occurrence and each defense other than denials shall be stated in a separate count." The conversion claim and the unjust enrichment claim are set forth in separate paragraphs of Count V. The claims for conversion and unjust enrichment should be pled in separate counts. *See Harris v. River View Ford, Inc.*, No. 00 C 8129, 2001 WL 1191188 (N.D. Ill. Oct. 4, 2001). However, the Court will address each of these claims.

D&A argues that the unjust enrichment claim is barred by the existence of a contract

concerning the same subject matter. Under Illinois law, a party cannot "state a claim for unjust enrichment when a contract governs the relationship between the parties." *First Commodity Traders, Inc. v. Heinold Commodities, Inc.*, 766 F.2d 1007, 1011 ( 7th Cir. 1985). Therefore, D&A argues, an unjust enrichment claim is futile because the parties were once in a contractual relationship. However, in *Heinold Commodities*, there was no dispute that a contract existed. Here, there is a good faith dispute as to whether a contract exists. In *Quadion Corp. v. Mache*, 738 F. Supp. 270, 278 (N.D. Ill. 1990), the court declined to dismiss the plaintiff's claim for equitable relief, even though the relationship between the parties was contractual, because "[u]nder Rule 8(e)(2) [of the Federal Rules of Civil Procedure] . . . plaintiffs may raise alternative claims of breach of contract and unjust enrichment despite the inconsistency of these claims." Furthermore, the *Mache* court reasoned that *Heinold Commodities* did not apply at the pleading stage. *Mache*, 738 F. Supp. at 278. D&A do not challenge the sufficiency of the pleading of this claim. Therefore, Scheffki's claim of unjust enrichment is not barred.

D&A next argues that the conversion element of Count V must be dismissed because money is not recoverable in a conversion action. In order to plead a claim for conversion, Scheffki must plead "(1) [D&A's] unauthorized and wrongful assumption of control, dominion or ownership over [her] personal property, (2) [her] right in the property, (3) [her] right to immediate possession of the property, absolutely and unconditionally and (4) [her] demand for possession of the property." *Roderick Dev. Inv. Co., Inc. v. Cmty. Bank of Edgewater*, 282 Ill. App. 3d 1052, 1057 (Ill. App. Ct. 1996).

As a general rule, under Illinois law, "an action for conversion may not be maintained for a mere failure to pay money unless it is capable of being described as a specific chattel." *Roderick Dev.*

*Inv. Co.*, 282 Ill. App. 3d at 1058 (citing *Fonda v. General Casualty Co. of Ill.*, 279 Ill. App. 3d 894 (Ill. App. Ct. 1996)). No conversion action lies for "money represented by a general debt or obligation." *Roderick Dev. Inv. Co.*, 282 Ill. App. 3d at 1059.

Illinois courts consider the following factors when determining whether money can be the subject of an action for conversion, that is, whether it is a specified and identifiable fund. *Roderick Dev. Inv. Co.*, 282 Ill. App. 3d at 1058. Money is a specified and identifiable fund when it is not an estimate but rather "a specific amount transferred to [the defendant] from an outside source." *Roderick Dev. Inv. Co.*, 282 Ill. App. 3d at 1059. In *Roderick Development Investment Company*, the court held that five percent of the final payment under purchase agreement was specific and identifiable because it was not an estimate; the amount of final payment could be determined by an accounting. 282 Ill. App. 3d at 1062.

Another factor that will be considered is whether the money is maintained in a separate account. *Roderick Dev. Inv. Co.*, 282 Ill. App. 3d at 1059.

Money can also be identifiable and specific by its source or description. *Roderick Dev. Inv. Co.*, 282 Ill. App. 3d at 1063. Thus, money is specific and identifiable if there is "an [established] obligation to treat it in a specified manner," *Roderick Dev. Inv. Co.*, 282 Ill. App. 3d at 1063 (quoting *Autoville, Inc. v. Friedman*, 510 P.2d 400, 402 (Ariz. Ct. App. 1973)), "an obligation to keep intact and deliver" it, *Roderick Dev. Inv. Co.*, 282 Ill. App. 3d at 1063 (quoting *Greene County Bd. Of Educ. v. Bailey*, 586 So. 2d 893, 893 (Ala. 1991) (citation omitted)), or it is earmarked for a particular purpose. *Roderick Dev. Inv. Co.*, 282 Ill. App. 3d at 1064 (citing *Unified Servs., Inc. v. Home Ins. Co.*, 460 S.E.2d 545, 549 (Ga. Ct. App. 1995)).

A conversion action for money will also lie where there is no debtor-creditor relationship

between the parties. *Roderick Dev. Inv. Co.*, 282 Ill. App. 3d at 1059. A debtor-creditor relationship is created when the plaintiff voluntarily transfers the funds to the defendant. *Roderick Dev. Inv. Co.*, 282 Ill. App. 3d at 1060.

In paragraph 57 of Count V, Scheffki alleges that, from 1994 until 2000, D&A did not pay fair market value for its rental of office space in a building owned by AR&S. She alleges that D&A converted the rent due to her as a partner of AR&S. No conversion action lies for "money represented by a general debt or obligation." *Roderick Dev. Inv. Co.*, 282 Ill. App. 3d at 1059. "[T]he covenant to pay rent creates no debt until the time stipulated for payment arrives." *Manhattan Prop., Inc. v. Irving Trust Co.*, 291 U.S. 320, 331 (1934); *see also Trust Co. of Chicago v. Fargeson*, 340 Ill. App. 344, 349-50 (Ill. App. Ct. 1950). Since the time for payment of rent on D&A's office space has already passed, the rent has become a debt and cannot be the subject of an action for conversion. *Roderick Dev. Inv. Co.*, 282 Ill. App. 3d at 1059. Therefore, this portion of paragraph 57 is stricken.

Scheffki also alleges in Count V that D&A did not compensate her for working on D&A matters from December 23, 2000 until January 12, 2001, did not make a $12,000 payment of her year-end distribution to her pension account or deliver her year-end final compensation in the amount of $15,000, and owes her payment for overtime worked during the 1994 to 2000 period and business expenses of $1,000. (Countercl. & Third-Party Compl. ¶¶ 58, 59.) It is not clear whether these allegations are part of her claim for conversion or her claim for unjust enrichment. Thus, these paragraphs do not give adequate notice of the claims being asserted against D&A and Ahern and Reynolds. Therefore, these paragraphs are stricken.

AR&S, Ahern and Reynolds argue that Counts I through III should be dismissed because:

(1) they are not opposing parties under Federal Rule of Civil Procedure 13 and therefore are not subject to counterclaims, and (2) Counts I through III are not valid third-party claims under Federal Rule of Civil Procedure 14. Scheffki argues that Rules 19 and 20 permit counterclaims and third-party claims against AR&S, Ahern and Reynolds.

Rule 13 provides that permissible counterclaims are "any claim which . . . arises out of the transaction or occurrence that is the subject matter of the opposing party's claim and does not require for its adjudication the presence of third parties of whom the court cannot acquire jurisdiction . . . any claim against an opposing party not arising out of the transaction or occurrence that is the subject matter of the opposing party's counterclaim." Fed.R.Civ.P 13(a), (b). Rule 13 also provides that "[p]ersons other than those made parties to the original action may be made parties to a counterclaim . . . in accordance with the provisions of Rules 19 and 20." Fed.R.Civ.P. 13(h).

Rule 19 permits joinder of persons in whose "absence complete relief cannot be accorded among those already parties." Fed.R.Civ.P 19(a)(1). Rule 20 provides that "[a]ll persons . . . may be joined in one action as defendants if there is asserted against them jointly, severally, or in the alternative, any right to relief in respect of or arising out of the same transaction, occurrence, or series of transactions or occurrences and if any question of law or fact common to all defendants will arise in the action." Fed.R.Civ.P. 20(a).

AR&S, Ahern and Reynolds are such persons under Rules 19 and 20. Scheffki's claims against AR&S, Ahern and Reynolds arise out of her employment with and termination from D&A and subsequent employment with CG, the same subject matter of D&A's complaint against her. Complete relief would require the presence of AR&S, Ahern and Reynolds; and there are questions of law and fact that are common to D&A, AR&S, Ahern and Reynolds.

AR&S, Ahern and Reynolds also argue that the counterclaims against them are improper because Counts I through III are brought solely against them, non-parties. *See Independence Tube Corp. v. Copperweld*, 74 F.R.D. 462, 467 (N.D. Ill. 1977). "However, both under the pre-1966 and amended versions of Rule 13(h), joint tortfeasors, individuals jointly and severally liable and parties conspiring with an original party to the suit have been permitted to be joined." *Independence Tube*, 74 F.R.D. at 467 (citations omitted). Moreover, "[i]t is the law in Illinois . . . that a corporate officer . . . may be held jointly and severally liable for torts committed by his corporation if he authorized or participated in the alleged wrongful act." *Independence Tube*, 74 F.R.D. at 467 (citing *Lowell Hoit & Co. v. Detiq*, 320 Ill. App. 179 (Ill. App. Ct. 1943)).

More recently, the Seventh Circuit noted "[n]or is it material that the counterclaim named additional parties, besides [the opposing parties], as counterclaim defendants. Rule 13(h) allowed them to be joined pursuant to Rule 20(a)." *Asset Allocation & Mgmt. Co. v. West. Employers Ins. Co.*, 892 F.2d 566, 574 (7th Cir. 1990). Thus, this argument also fails. Therefore, dismissal of AR&S, Ahern and Reynolds as counterdefendants is inappropriate.

AR&S, Ahern and Reynolds also argue that Counts I through III are improper third-party claims under Rule 14. Third-party claims are proper against "a person not a party to the action who is or may be liable to the third-party plaintiff for all or part of the plaintiff's claim against the third-party plaintiff." Fed.R.Civ.P. 14(a). Scheffki argues that AR&S, Ahern and Reynolds are proper third-party defendants because should she be liable to D&A, AR&S, Ahern and Reynolds will be liable to her for the dissolution and wind-up of AR&S and the buy-out of her shares of D&A. This argument is circular and lacks merit. Scheffki does not plead that AR&S, Ahern or Reynolds are secondarily liable to D&A in the event that she is found liable for any count in D&A's complaint.

Therefore, AR&S, Ahern and Reynolds are dismissed as third-party defendants.

AR&S, Ahern and Reynolds also argue that Scheffki's claim for defamation is improperly pled as a counterclaim and a third-party claim. The third-party claims are dismissed for the reasons discussed earlier. However, Count VI does survive as a counterclaim, even though it is pleaded solely against a non-party, for the reasons discussed earlier.

Finally, AR&S, Ahern and Reynolds move to dismiss Counts IV and V for the same reasons as D&A. These counts are not dismissed as counterclaims against them for the reasons discussed earlier.

## SUMMARY

Defendant's motion to dismiss Counts I, III, VII, IX, X and XI of Plaintiff's Complaint is denied. Counter-defendant D&A's motion to dismiss Counts I through VI of Scheffki's counterclaim is granted as to paragraphs 57, 58 and 59. AR&S, Ahern and Reynolds are dismissed as third-party defendants. However, such parties are proper counter-defendants and the counterclaims are not dismissed against them except with respect to paragraphs 57, 58 and 59.

## CONCLUSION

For the reasons stated above, Defendant Michelle Scheffki's Motion to Dismiss Counts III, VII, IX, X and XI Pursuant to Rule 12(b)(6) and Count I as Duplicative [18-1] is denied; Desmond & Ahern's Motion to Dismiss Counts I-VI of Scheffki's Counterclaim Pursuant to Rule 12(b)(6) [30-1] is granted with respect to paragraphs 57, 58, and 59 and denied in all other respects; and AR&S Partnership, Hugh J. Ahern and George B. Reynolds' Motion to Dismiss Defendant Michelle Scheffki's Counterclaim and Third-Party Complaint [32-1] is denied with respect to the counterclaims except as to paragraphs 57, 58 and 59, and granted with respect to the third-party complaint.

**IT IS SO ORDERED.**

John W. Darrah, Judge
United States District Court

Date: *12-19-01*